**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHARLES ANTHONY JONES,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **A-11-CV-422 ML** |
| | § | |
| **UNITED PARCEL SERVICE,** | § | |
| | § | |
| **DEFENDANT.** | § | |

## <u>ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment, filed December 20, 2012 (Clerk's Dkt. #51).

## I.  BACKGROUND

This is a Title VII case in which Plaintiff Charles A. Jones ("Jones") claims his former employer, United Parcel Service ("UPS"), discriminated against him on the basis of his race and retaliated against him due to his complaints of discrimination. UPS now moves for summary judgment arguing that Jones' allegations are procedurally barred and that Jones cannot offer any evidence demonstrating UPS's actions were motivated by discrimination or retaliation. Jones has not timely responded to UPS's motion and thus forgoes his opportunity to present summary judgment evidence or arguments.[1] *See Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (where plaintiff fails to respond to summary judgment motion, court may accept defendants' evidence as undisputed).

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only

---

[1] UPS filed its Motion for Summary Judgment on December 20, 2012. "A response to a dispositive motion shall be filed not later than 14 days after the filing of the motion." Local Rule CV-7(e)(2). Jones' response was thus due January 3, 2013.

"if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 1355–56 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (1993). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

## III.   RELEVANT FACTS

UPS first hired Jones in 2006 as a seasonal helper at its Austin facility. (Clerk's Dkt. #51, Ex. 5 at 45). In January 2007, he was hired into a part-time Loader/Unloader position, a position he held until his termination for job abandonment in May 2010. (*Id.*, Ex. 6 ¶4). At all times, Jones was

considered an hourly, part-time, bargaining-unit employee. (*Id.*, Ex. 5 at 31, 48).

Throughout Jones's employment, UPS had to counsel him regarding tardiness and absence. In fact, over the first five months of his employment, Jones was late to work approximately forty-four times. (*Id.*, Ex. 5 at 85, Ex. 7). Jones was warned in May 2007 that his continual failure to report to work on time would result in discipline. (*Id.*, Ex. 7). Despite these warnings, Jones continued to struggle with his attendance. In the end, UPS had to discipline Jones on seven different occasions between January 2, 2007 (his hire date as a regular UPS employee) and November 7, 2007. (*Id.*, Ex. 8, Ex. 9, Ex. 10, Ex. 11, Ex. 12, Ex. 41, Ex. 42).

On November 8, 2007, Jones suffered a job-related injury. (*Id.*, Ex. 13). On November 13, 2007, UPS extended a bona fide job offer under the Texas Workers' Compensation Act to Jones for temporary alternative work ("TAW"). (*Id.*, Ex. 14). Jones accepted the offer and proceeded to work as a Helper in the Small Sort area while recuperating from his injury. (*Id.*).

Jones claims UPS's then part-time Preload Supervisor Justin Badger ("Badger") told him to "stop talking" on or about November 14, 2007.  (*Id.*, Ex. 5 at 14-15). In response, Jones said, "Stop talking? I can talk. I'm a grown man," to which Justin reportedly responded "Stop acting like a boy." (*Id.*). Jones stated that he felt both his supervisor Leroy Reyes ("Reyes") and Badger discriminated against and harassed him. (2nd Am. Compl. at 2).

On the same day Jones submitted a Union Grievance Form complaining of Badger's behavior. (*Id.* at 22). On November 29, 2007 Jones submitted two Union Grievance Forms stating he was "being discriminated against by Justin, Leroy, and Steve" and he was "being retaliated against for filing grievances." (*Id.* at 16-17). On December 17 and 18, 2007 Jones submitted two Union Greivance Forms complaining that he received termination letters. (*Id.* at 14-15). The grievance

forms contain a section at the bottom reporting the grievance decision, and Jones' grievances resulted in the withdrawal of the termination letters. (*Id.*).

Due to his 2007 on-the-job injury, Jones worked on and off for the duration of his employment, depending on the restrictions his doctor placed on him. (Clerk's Dkt. 51, Ex. 16, Ex. 17, Ex. 18, Ex. 19, Ex. 20). On June 2, 2009, Jones was released to return back to his full duty Loader/Unloader position and successfully completed a functional capacity examination ("FCE"). (*Id.*, Ex. 21, Ex. 22). On June 25, 2009, his doctor again removed him from the workplace due to his 2007 on-the-job injury. (*Id.*, Ex. 23). Jones remained out of work until September 9, 2009 when he was again released to full duty. (*Id.*, Ex. 24). At that time, UPS scheduled Jones to take another FCE on September 14, 2009, the third working day after receiving Jones' release to return to work; however, Jones did not appear for his FCE appointment. (*Id.*, Ex. 6 ¶6, Ex. 25). His FCE was rescheduled for October 30, 2009. Jones appeared for and successfully completed that FCE. (*Id.*, Ex. 26). Jones returned to work the next business day, November 2, 2009. (*Id.*, Ex. 27, Ex. 28).

From Jones' return to work in November 2009 through March 2, 2010, Jones continued to fail to appear for work on a number of occasions, which resulted in UPS issuing him a warning letter and three "intent to suspend" letters. (*Id.*, Ex. 8, Ex. 29, Ex. 30, Ex. 31, Ex. 32).Through the union grievance process, these suspensions were reduced in length, and Jones ultimately served a four-day unpaid suspension. (*Id.*, Ex. 33).

On March 8, 2010 Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, Ex. 35). In his charge, Jones claimed (1) he had been discriminated against on the basis of his race, Black, and retaliated against for filing an internal grievance on November 7, 2007; (2) from November 2007 through October 5, 2009, he was on

medical leave and was not paid vacation time and did not receive the pay raises given to other employees; and (3) on October 9, 2009 he was released by his doctor to full duty but his supervisor would not allow him to come back to work without completing the FCE test, which resulted in a loss of five days of pay. (*Id.*).

Jones was out of work again starting March 30, 2010 due to his prior on-the-job injury. (*Id.*, Ex. 27). On April 19, 2010, Jones was released to return to work without restrictions.  (*Id.*, Ex. 36). As it had before, UPS scheduled Jones for another FCE in late April. (*Id.*, Ex. 6 ¶8). He again failed to appear. (*Id.*). Jones later claimed he had approval to be away from work for an indefinite time period due to the death of an out-of-town family member. (*Id.*, Ex. 5 at 215-216). His management team states it did not provide such approval. (*Id.*, Ex. 6  ¶8).

Believing Jones to have abandoned his job, Domingo Acosta ("Acosta"), Business Manager for UPS, mailed a letter to him on April 27, 2010, instructing him to report to work within forty-eight hours. (*Id.*, Ex. 37). Jones did not do so. (*Id.*, Ex. 5 at 224, Ex. 6 ¶9). As a result, on May 3, 2010, Acosta notified Jones that his employment was terminated for job abandonment. (*Id.*, Ex. 38, Ex. 6 ¶9). His termination became effective on May 13, 2010. (*Id.*, Ex. 6 ¶¶10-11, Ex. 40).

On February 22, 2011, the EEOC dismissed Jones's March 2010 charge and issued Jones a right-to-sue notice.  (*Id.*, Ex. 35). Before his ninety day limitations period expired, Jones filed the present lawsuit pro se against UPS alleging discrimination and retaliation in violation of Title VII.

## IV.   DISCUSSION

Jones complains in his Second Amended Complaint that: (1) in November 2007 he "was singled out for harassment on account of [his] race" and "was suspended on account of [his] race;" (2) in October 2009 he was "prevented from returning to work in retaliation for filing grievance that

5

[he] was discriminated against on account of [his] race;" and (3) in May 2010 he "was fired in retaliation for filing a discrimination claim." (Clerk's Dkt. #41). In an abundance of caution given Jones' pro se status, the Court will treat each of the three underlying incidents as Title VII claims for both discrimination and retaliation.

### A.      2007 Discrimination and Retaliation Claims

UPS argues that Jones did not timely file a charge as to any November 2007 conduct. Under Title VII, the plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged and must file a charge of retaliation with the EEOC within 180 days. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it"); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)).

Jones filed his EEOC charge on March 8, 2010, and thus the only claims considered timely are any that may have occurred from May 11, 2009 to March 8, 2010. The discrimination and retaliation Jones claims he suffered in 2007 fall outside this period and are time barred.[2] Accordingly, summary judgment should be granted regarding Jones' 2007 discrimination and retaliation claims.

### B.      2009 Discrimination and Retaliation Claims

Courts apply the modified *McDonnell Douglas* approach in racial discrimination cases under Title VII. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

---

[2]UPS also argues, because Jones' EEOC charge is devoid of any complaints regarding racial harassment in 2007, such claims are barred as not fully exhausted. Since the 2007 claims are time-barred, the Court need not address this argument.

> the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"

*Rachid*, 376 F.3d at 312 (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 865 (M.D.N.C.2003)).

UPS argues Jones cannot establish a *prima facie* case of either discrimination or retaliation based upon his complaint that in October 2009 he was "prevented from returning to work in retaliation for filing grievance that [he] was discriminated against on account of [his] race." (Clerk's Dkt. #41). To establish a *prima facie* case of discrimination under Title VII, Jones must prove that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

UPS argues Jones has failed to provide any evidence he was treated differently than any other employee in being required to complete an FCE in the fall of 2009 or in having it rescheduled after failing to appear at the initial setting. In fact, Jones stated in his deposition, "I wouldn't know if anyone got treated better." (Clerk's Dkt. #51, Ex. 5 at 41-42). In failing to produce any evidence of disparate treatment, Jones fails to establish a *prima facie* case of discrimination concerning his 2009 claim. *See Gibson v. Verizon Services Org., Inc.*, 2012 WL 5914256 at *4 (5th Cir. Nov. 15, 2012) (without other facts, mere personal belief that Plaintiff was treated less favorably than similarly situated employees outside her protected groups is insufficient to meet fourth requirement of *prima facie* case).

UPS argues that, even if Jones had established a *prima facie* case of discrimination, Jones would be unable to overcome UPS's legitimate, non-discriminatory reason for handling the October 2009 FCE the way it did. The summary judgment evidence demonstrates Jones was warned and disciplined on numerous occasions about the importance of reporting to work when required. Despite such, Jones chose not to appear for his September 14, 2009 FCE which was scheduled a mere three working days after he was released to return to work. (*Id.*, Ex. 6 ¶6, Ex. 25). UPS then rescheduled Jones' FCE to October 30, 2009, which he successfully completed allowing him to return to work November 2, 2009. (*Id.*, Ex. 27, Ex. 28). The Court finds a legitimate and non-discriminatory reason in preventing Jones from returning to work sooner—namely Jones did not appear for his FCE.

The only evidence that could potentially demonstrate pretext or mixed motives regarding UPS preventing Jones from returning to work sooner is Badger's alleged "stop acting like a boy" remark in 2007. UPS argues that, even if that statement was made, the remark (1) does not relate to Jones's race, (2) was made two years before the adverse action at issue, (3) was made by Badger, who had nothing to with the FCE, and (4) is completely unrelated to the adverse action.

Given the fact that the "stop acting like a boy" remark was allegedly made November 14, 2007 and Jones' initially scheduled FCE was September 14, 2009, and given the fact that there is no evidence that Badger had any control over the FCE decision or scheduling, the alleged "stop acting like a boy" remark is clearly a stray remark that does not demonstrate pretext or mixed motive. *See Rubinstein v. Admin. of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2001) (potentially discriminatory comments are merely stray remarks where Plaintiff "fails to offer evidence that the comments he complains of are either proximate in time to his [adverse employment actions], or that the comments are related to the employment decisions at issue"); *Cantu v. Nocona Hills Owners*

*Ass'n,* 2002 WL 1899659 at *3 (5th Cir. July 12, 2002) (affirming summary judgment where stray racial remarks were not proximate in time or related to adverse action).

Moreover, Jones' mere subjective belief is insufficient to refute UPS's legitimate, non-discriminatory reason. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (subjective belief plaintiff not selected based upon race insufficient to create inference of discriminatory intent); *Gollas v. Univ. of Tex. Heath Sci. Ctr.*, 425 Fed. Appx. 318, 329 (5th Cir. 2011) (plaintiff's unsubstantiated allegations and subjective belief of retaliation insufficient to survive summary judgment). Accordingly, even if Jones had established a *prima facie* case of discrimination, Jones would be unable to create a genuine issue of material fact concerning either pretext or mixed-motives to overcome UPS's legitimate, non-discriminatory reason for rescheduling Jones' FCE.

To establish a *prima facie* case of retaliation under Title VII, Jones must demonstrate: (1) he engaged in a protected activity; (2) an adverse action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). UPS argues Jones fails to produce sufficient evidence that the alleged adverse action in October 2009 had some causal connection with his alleged prior protected activity. Jones claims that he was prevented from returning to work in October 2009 in retaliation for filing a grievance. As noted above, Jones has not submitted any summary judgment evidence. Because Jones is a pro se litigant, the Court will consider the attachments to his second amended complaint in which he has attached his Union Grievance Forms. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972) (pro se pleadings properly afforded liberal construction). The most recent grievance forms Jones provides are dated December 17 and 18, 2007. (Clerk's Dkt. 41 at 14-15).

9

Jones offers neither evidence nor argument demonstrating some causal connection between any of his grievance forms in 2007 and UPS's decision almost two years later to reschedule his FCE after he failed to appear for his initially scheduled FCE. Thus the only potential causal connection is the temporal proximity of these events; however, the Supreme Court has held temporal proximity must be very close in cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-274, 121 U.S. 1508, 1511 (2001). Specifically, the nearly two year gap between the events in this case is simply too tenuous. For example, courts have found a three or four month gap between the protected activity and the adverse action to be insufficiently close. *Id*. (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). Lacking any evidence of a causal connection between these events, the Court finds Jones fails to establish a *prima facie* case of retaliation under Title VII.

UPS also argues that, even if Jones had established a *prima facie* case of retaliation, Jones would be unable to overcome UPS's legitimate, non-discriminatory reason for handling the October 2009 FCE the way it did.

> Retaliation claims under Title VII are governed by the familiar three-step *McDonnell Douglas* test. Under that test, an employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation. To establish a prima facie case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.

*LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 388-389 (5th Cir. 2007)

(citations omitted). As mentioned above, the Court finds a legitimate and non-discriminatory reason in preventing Jones from returning to work sooner—namely Jones did not appear for his FCE.

Jones does not appear to offer any evidence that UPS's rescheduling his FCE due to his unexplained absence was pretext for retaliation. As discussed above, his mere subjective belief is insufficient to refute UPS's legitimate, non-discriminatory reason. Since Jones fails to demonstrate a *prima facie* case and, even if he did, he would fail to defeat UPS's legitimate, non-discriminatory reason for rescheduling his FCE, his retaliation claim fails. Accordingly, summary judgment should be granted regarding Jones' 2009 discrimination and retaliation claims.

### C.     2010 Discrimination and Retaliation Claims

Jones alleges that in May 2010 he "was fired in retaliation for filing a discrimination claim." (Clerk's Dkt. #41). Regarding Jones' claim of discrimination regarding his termination, UPS argues Jones cannot bring such a claim because he did not amend his EEOC charge to allege discrimination was a basis for his termination. The Supreme Court has held that a Title VII plaintiff is obliged to file an administrative claim as to each discrete discriminatory act. *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 110-14 (2002). In *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir.1981), the Fifth Circuit held that a plaintiff may proceed in district court on an unexhausted retaliation claim—i.e. a claim for which the plaintiff has not filed an administrative claim—if that claim is alleging retaliation for bringing a properly exhausted claim before the district court.

However, in a recent unpublished opinion, the Fifth Circuit, citing *Morgan*, held that the *Gupta* exception applies only to retaliation claims and not "claims in which both retaliation and discrimination are alleged." *Sapp v. Potter*, 413 F. App'x 750, 753 (5th Cir. 2011). "Permitting simultaneous proceedings for the same inciting event would 'thwart the administrative process and

peremptorily substitute litigation for conciliation.'" *Id.* (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)). Thus, in the present case Jones cannot bring both unexhausted discrimination and retaliation claims based upon his termination which he alleges was in response to his filling an EEOC charge. Accordingly, Jones' discrimination claim, regarding his 2010 termination, is barred for failure to exhaust administrative remedies, even though the claim arose after the plaintiff had filed an EEOC charge.

Regarding the retaliation claim, UPS argues Jones cannot establish the causal connection requirement of his retaliation claim. To establish such a link, Jones at a minimum is required to demonstrate the final decisionmaker knew about his protected activity. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003). If the final decisionmaker is "not aware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Gollas*, 425 F. App'x at 325 (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)). Jones has failed to produce any evidence demonstrating Acosta, the individual who made the decision to terminate Jones, was aware Jones had filed an EEOC charge or any other claim of discrimination. As a result, Jones fails to establish a *prima facie* case of retaliation over his termination.

UPS argues that, even if Jones could establish a *prima face* case of retaliation over his termination, Jones would be unable to overcome UPS's legitimate, non-discriminatory reason for the termination. Jones was warned and disciplined on numerous occasions about the importance of reporting to work when required. Despite such, Jones chose not to appear for his FCE after being released to return to work in April 2010. He did not appear even after being notified his failure to report to work would result in termination. (Clerk's Dkt. #51, Ex. 37). Given this evidence of job abandonment, the Court finds UPS has demonstrated a legitimate, non-discriminatory reason for its

12

decision to terminate Jones in May 2010.

Jones does not appear to offer any evidence that his termination for job abandonment was pretext for retaliation. Although the temporal proximity of Jones' EEOC filing and his termination are close, the Fifth Circuit "has rejected temporal proximity, without more, as a basis for showing causation in retaliation cases." *McDowell v. Home Depot USA, Inc.*, 126 Fed.Appx. 168, 170 (5th Cir. 2005) (citing *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Moreover, as stated above, his mere subjective belief is insufficient to refute UPS's legitimate, non-discriminatory reason. Accordingly, summary judgment should be granted regarding Jones' 2010 discrimination and retaliation claims.

## V. CONCLUSION

Defendant's Motion for Summary Judgment (Clerk's Dkt. #51) is **HEREBY GRANTED**.

**SIGNED** on February 12, 2013.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE